Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, California 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
Email: gkleiner@rinconlawllp.com

Counsel for FRED HJELMESET,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ICHARTS, INC.,<br><br>Debtor. | Case No. 18-50958 MEH<br>Chapter 7<br><br>**COMBINED RESPONSE TO THE OBJECTION OF SEYMOUR DUNCKER TO THE APPLICATIONS FOR COMPENSATION FOR THE TRUSTEE AND HIS PROFESSIONALS**<br><br>Date: June 25, 2020<br>Time: 10:30 a.m.<br>Place: 280 South First Street<br>      Hon. M. Elaine Hammond<br>      Courtroom 11<br>      San Jose, CA 95113 |

**TO THE HONORABLE M. ELAINE HAMMOND, UNITED STATES BANKRUPTCY JUDGE:**

On April 14, 2020, the Debtor's former CEO, Seymour Duncker, filed an objection to the compensation of the Trustee's counsel, his accountant, and impliedly, the Trustee's compensation. Docket 49. While the opposition seeks to clothe itself under the mantle of protecting the interests of creditors, Mr. Duncker's primary goal appears to be his complaint that the Trustee has declined his purchase offer for residual assets of the bankruptcy estate. The Trustee declined Mr. Duncker's purchase offer because the sums he is willing to pay would only *slightly* lessen the administratively insolvent status of the estate and would result in no payments to the estate's pre-petition creditors.

Although this was explained to Mr. Duncker's attorney, it does not appear to have been imparted to Mr. Duncker. As made clear in the opposition (and in Mr. Duncker's June 18, 2020 letter supplementing his objection – attached hereto as **Exhibit A**), Mr. Duncker's primary goal is to acquire the remaining assets of the Debtor's estate on the cheap.

## MR. DUNCKER HAS NO STANDING

Mr. Duncker has no standing. Neither he, nor his wife, Valerie Duncker, are creditors in this bankruptcy estate and neither has standing. Standing is a jurisdictional issue that the Court is obliged to examine. *In re Lucas Dallas*, 185 B.R. 801, 804 (9th Cir. BAP 1995); *In re Fondiller*, 707 F 2d. 441, 442 (9th Cir. 1983). As made clear in a review of the Claims register, Mr. Duncker is not a creditor of the bankruptcy estate. *See*, Request for Judicial Notice, Exhibit A. "[A] person has standing to object to an order if that person can 'demonstrate that the order diminishes the person's property, increases the person's burdens, or impairs the person's rights.'" *In re Cult Awareness Network, Inc.*, 151 F 3d. 605, 608 (7th Cir. 1998) (citing *In re DuPage Boilerworks, Inc.*, 965 F 2d. 296, 297 (7th Cir. 1992) and *In re Andreuccetti*, 975 F 2d. 413, 416 (7th Cir. 1992)).

> Courts consistently have noted a public policy interest in reducing the number of ancillary suits that can be brought in the bankruptcy context so as to advance the swift and efficient administration of the bankrupt's estate. This goal is achieved primarily by narrowly defining who has standing in the bankruptcy proceeding.

151 F 3d. at 609, quoting *In re Richman*, 104 F 3d. 654, 656-657 (4th Cir. 1997).

Mr. Duncker has made multiple attempts to purchase assets of the estate and his offers have been rejected by the Trustee. The law is very clear that disappointed buyers have no standing. Mr. Duncker's objection is filed from the perspective of a disappointed buyer, not a real party in interest in the bankruptcy case. He is not a "person aggrieved" under the *Fondiller* case. The person aggrieved test limits appellate standing to "those persons who are directly and adversely affected pecuniarily by an order of the Bankruptcy Court." 707 F 2d. at 442l.

> Courts that have considered appellate standing in the context of the sale or other disposition of estate assets have generally held that creditors have standing to appeal, but disappointed prospective purchasers do not.

*In re O'Brien Environmental Energy, Inc.*, 181 F 3d. 527, 531 (3rd Cir. 1999).

Because Mr. Duncker is not a creditor of this estate and, therefore, has no pecuniary interest in the outcome of the Trustee's Final Report or the fee applications filed by the Trustee's professionals, he is not an aggrieved person and has no standing to object.

While the Trustee and his professionals submit that Mr. Duncker has no standing to oppose the Trustee's Final Report and the fee applications of the Trustee's professionals, his meritless accusations will, nonetheless, be addressed.

## THE ADVERSARY PROCEEDING

Soon after the case was filed, the Trustee and his counsel investigated the multiple payments from the Debtor to its lenders located in Europe and to Mr. Duncker's wife, Valerie Duncker. Based on this evaluation, it appeared that Mrs. Duncker had received an insider preference in the amount of $60,000. Trustee's counsel wrote to Ms. Duncker, seeking to resolve the dispute without the need for litigation. When no response was received from Mrs. Duncker, the Trustee instructed his counsel to file a complaint seeking to recover the sums Mrs. Duncker received from the Debtor. On February 27, 2019, the Trustee filed an adversary proceeding entitled *Hjelmeset v. Valerie Duncker*, Adversary Proceeding No. 19-05011 ("Adversary").

After the Adversary was filed, Mrs. Duncker engaged counsel. Trustee's counsel, in conjunction with the estate's accountant, evaluated the defenses raised by Mrs. Duncker's counsel and her modest settlement proposal. According to Mrs. Duncker, the Debtor had a positive "going concern" value at the time that the transfers were made and was therefore not insolvent. The Trustee and his professionals concluded that the "going concern" defense (which theoretically resulted in the Debtor being solvent in January 2018, the time period in which Mrs. Duncker filed her financing statement) was not a viable. The Trustee countered Mrs. Duncker's settlement offer, propounded

discovery and was preparing for trial in the Adversary. In October 2019, counsel for Mrs. Duncker suggested that a settlement was possible and he drafted a stipulation seeking to continue the trial date and pre-trial deadlines to allow for further negotiations. *See*, Adversary Docket 16.

When the parties ultimately reached a settlement, the Trustee's notice seeking Bankruptcy Court approval of the settlement went to great lengths to explain that the Trustee was prepared to try the case, but that there was no guaranty that the Trustee's expert could establish the key element at trial, and further went on to provide that the Trustee's anticipated expenses related to continued discovery, expert costs and the trial itself could "exceed the net amount the estate received if the matter went to trial." *See*, Docket 41. Hence, the matter settled.

The Opposition complains of excessive and unreasonable fees have been requested in pursuing the Adversary. However, Mr. Duncker has provided no evidence that the Trustee and his professionals did not have good grounds in pursing the Adversary or overcharges the estate. To the extent that the Court concludes Mr. Duncker has standing, his objection to payment of the professionals and Trustee's compensation should be overruled.

## MR. DUNCKER'S ATTEMPTS TO ACQUIRE ADDITIONAL ASSETS

Mr. Duncker's chief complaint and the real reason behind his opposition and his June 18 letter, however, is the Trustee's response to his *de minimums* offer to purchase the residual assets of the Debtor's estate.

Mr. Duncker asserts that, soon after the case was filed, he contacted the Trustee to encourage the Trustee to pay a maintenance fee for the Debtor's domain name. Mr. Duncker asserts that the domain name has a valuation in excess of $21,000. (It should be noted that the valuation presented in the objection is on "market value as of **April 14, 2020**" almost two years after the Debtor's case was filed). Mr. Duncker neglects to mention that the estate had no assets to pay any maintenance fees. If Mr. Duncker thought that the domain name had any value, he should have made a purchase offer to the Trustee. He did not.

As noted in the opposition, Mr. Duncker made an offer to purchase the residual assets of the estate for $3,000. The Trustee countered his purchase offer with an amount that would, if accepted, result in the estate receiving sufficient funds to pay all Chapter 7 administrative fees in full, and

provide a very modest distribution to priority creditors. Not happy with the Trustee's counter-offer, Mr. Duncker, instead, devoted his time to complaining about the Trustee's refusal to accept his purchase offer. Mr. Duncker's renewed purchase offer in the opposition for the residual assets of the estate (be it $3,000 or $5,000), is inadequate and will not result in funds being distributed to pre-petition creditors because the estate is administratively insolvent at the Chapter 7 level.

Not satisfied with his April 14, 2020 opposition, Mr. Duncker wrote to the Court on June 18, 2020, seeking to have the court direct the Trustee to accept his $5,000 offer for the Debtor's 8 patents. See Exhibit A. As Mr. Duncker's proposed forced sale will not result in a benefit to creditors of the estate, other than Chapter 7 administrative creditors, the Trustee, in the exercise of his business judgment, declined the offer.

WHEREFORE, The Trustee and his professionals pray for orders overruling Mr. Duncker's objections, approving the Trustee's Final Report, and the requests for compensation of the Trustee and his professionals.

DATED: June 22, 2020                    RINCON LAW LLP


                                        By: /s/ Gregg S. Kleiner
                                            GREGG S. KLEINER
                                            Counsel for FRED HJELMESET,
                                            Trustee in Bankruptcy

Mr. Seymour Duncker  
Debtor's Responsible Individual  
E-mail: sduncker@gmail.com

**[PREPARED WITH ASSISTANCE OF COUNSEL]**

June 18, 2020

<u>Via E-mail</u>

Honorable M. Elaine Hammond  
c/o Clerk (CANB-EMERGENCY-FILINGS@canb.uscourts.gov)  
United States Bankruptcy Court  
Northern District of California  
Temporary Mailing Address:  
450 Golden Gate Ave., Mail Box 36099  
San Francisco, CA 94102

Re: <u>Limited Objection to Trustee's Final Report, *In re iCharts, Inc.* No. 18-50958 MEH</u>

Dear Judge Hammond:

I write to object to the Trustee's Final Report on the limited basis that it fails to account for the administration or abandonment of substantial intellectual property assets, including eight patents in which the Debtor has an interest, disclosed on the Debtor's schedules. [*See* Dkt. No 1, p. 13 of 103.]

I previously wrote to the Court on April 15, 2020, also with the assistance of counsel, to object to the applications for compensation by the Trustee's counsel and accountant as excessive, in light of the dismal results achieved in this case and related adversary proceeding, and the Trustee's professionals' refusal to take actions to preserve and maximize the value of the estate, causing harm to the estate and its creditors. [Dkt. No. 49.] In that letter, I also offered to purchase all of the debtor's remaining assets in exchange for payment of $5,000.

I continue to be interested in purchasing all of the debtor's remaining assets, which are seemingly slated to be abandoned under Bankruptcy Code section 554, and restate my offer to purchase iCharts' residual intellectual property, including its eight scheduled patents, for consideration of $5,000. Notably, in light of the proposed reduction of the Trustee's professionals' fees, my offered consideration would provide a substantial dividend to Mr. Jeff James and Mr. Daniel Steuer, both former employees of the Debtor, on their section 507(a)(4) priority claims, which they would surely appreciate during these difficult economic times.

**EXHIBIT A**

I therefore respectfully request that the Trustee consider and accept my offer and that the Court enter an order:

(i) directing me to wire $5,000 into the estate's account, and

(ii) assigning all of iCharts Inc.'s right, title and interest in patents bearing patent numbers US8,271,892, US8,661,358, US8,520,000, US9,270,728, US9,716,741, US9,712,595, US9,979,758, US9,665,654, 14/629,309, 14/629,349, 15/717,590, 15/717,601, including the right to sue for and recover past damages and to further develop the patent portfolio, as well as any and all patents, patent applications, trademarks, source code and copyrights, that are remaining with iCharts Inc.'s estate, to me or to my designated entity.

*See U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1471 (D.C. Cir. 1991) ("Clearly, a debtor's contract rights and its interest in a patent constitute property of the estate."); *see also Chesapeake Fiber Packaging Corp. v. Sebro Packaging Corp.*, 143 B.R. 360 (D. Md. 1992), aff'd, 8 F.3d 817 (4th Cir. 1993) (Once assignee of patent filed Chapter 11 petition, its contract rights under assignment agreement, including its ownership of patent application, were property of estate, and any purported abandonment of that property during Chapter 11 case without approval of bankruptcy court was invalid.).

Respectfully submitted,

Seymour Duncker

**EXHIBIT A**